## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THERESA HERZOG,** | : | **Civil No. 1:20-CV-1081** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.   Introduction

The ability to ambulate unassisted is often a key component to any disability

determination. If a disability claimant is unable to move unassisted in the workplace,

the ability of that claimant to perform gainful employment is significantly eroded.

Thus, when an ALJ's determination regarding whether a disability claimant requires

assistance to ambulate potentially effects the outcome of a case, that determination

must be supported by substantial evidence and the basis for this determination must

be properly articulated by the ALJ in order to allow for meaningful review of this

aspect of a disability determination.

We are reminded of these familiar principles in the instant case. On November

22, 2016, Theresa Herzog applied for Supplemental Security Income benefits under

the Social Security Act alleging that she had become disabled due to a heart condition, stroke, fatigue, and dizziness. (Tr. 80, 192). One element of her disability claim was Herzog's assertion that she needed an assistive device to ambulate. Every physician who actually treated or examined Herzog concurred in her need for an assistive device to ambulate. The only contrary medical opinion came from a source who never treated, saw, or examined Herzog, and who opined that she did not need a cane through an enigmatic unexplained entry on a check box form. At her disability hearings, it was apparent that Herzog's use of a cane could preclude her from any form of employment. Therefore, this contested issue was a material fact in any disability analysis.

The ALJ ultimately found that Herzog was not disabled, and in doing so apparently gave greater weight to the opinion of the one doctor who never observed her ambulate, discounting the views of those physicians who treated or examined Herzog and had first-hand knowledge regarding whether she needed assistance in ambulating, and who all agreed that she needed a cane to ambulate. The ALJ reached this curious conclusion in a fairly summary fashion, and the ALJ's analysis of this issue does not permit for a reasoned analysis on appeal of whether substantial evidence supported this conclusion. Accordingly, we find that the ALJ's burden of

articulation has not been met in this appeal, and we will remand this case for further consideration and evaluation of the medical opinion evidence.

## II. <u>Statement of Facts and of the Case</u>

On November 22, 2016, Theresa Herzog applied for Supplemental Security Income benefits under the Social Security Act alleging that she had become disabled due to a heart condition, stroke, fatigue, and dizziness. (Tr. 15, 80, 192). Herzog was born in 1969 and was approximately 47 years old at the time of the alleged onset of her disability. (Tr. 24). She had a high school education and prior employment as a laborer and cook. (<u>Id.</u>)

With respect to the pivotal issue in this appeal—the question of whether Herzog needed an assistive device to ambulate—the record reveals the following: In May of 2017, Herzog was treated for stroke-like symptoms. (Tr. 376-77). Following this incident Herzog reported multiple syncopal episodes in July of 2017. (Tr. 370, 398). Medical records also indicated that Herzog experienced persistent, progressive weakness on her left side and difficulty walking.

By November 2017, clinical records indicated that Herzog was encountering episodes in which her left leg "stops working." (Tr. 440). These problems of left leg weakness and instability continued in 2018, with Herzog reportedly having a hard time walking in March of 2018 due to numbness and weakness in her left leg. (Tr.

396). By April of 2018, treatment records revealed that Herzog was "dragging" her left leg and walking cautiously while favoring her left leg. (Tr. 425-26). Physical therapy was recommended for Herzog due to her left leg impairment. (Tr. 427).

Given this history of left side impairment, on August 1, 2018, Herzog's treating physician, Dr. Neal Davis, completed a medical source statement describing her physical limitations. (Tr. 541-44). In this statement, Herzog's treating source physician reported that she was impaired due to left side weakness and numbness. (Tr. 541). Dr. Davis also stated that Herzog required the use of a cane due to her imbalance, pain, and weakness. (Tr. 543).

Dr. Davis' opinion that Herzog needed a cane to ambulate was independently confirmed through a June 29, 2018 consultative physical examination of Herzog conducted by an independent evaluator, Dr. Justine Magurno. (Tr. 458-71). During this examination, Dr. Magurno repeatedly documented Herzog's need for a cane to ambulate (Tr. 460, 463, 464), while also observing that Herzog required instruction and training regarding how to use the cane. (Id.) According to Dr. Magurno, Herzog displayed both an abnormal gait and left side weakness which required the use of the cane. (Id.)

It was against this clinical backdrop that an ALJ conducted an hearing regarding Herzog's disability application on December 13, 2018. (Tr. 31-58). At the

time of this hearing, the unanimous consensus of those medical professionals who had treated, seen, and examined Herzog was that she required a cane to ambulate. During the hearing, Herzog and a vocational expert both appeared and testified at this hearing. (Id.) In her testimony, Herzog reiterated her need for a cane to ambulate. (Tr. 44-5). The vocational expert, in turn, testified that Herzog's use of a cane in the workplace would preclude employment and render her disabled. (Tr. 52). Thus, at the close of this initial hearing, the evidence before the ALJ consisted of a treating and examining source agreement that Herzog needed a cane to ambulate, coupled with medical records documenting left leg impairments, Herzog's own testimony that she required the use of a cane, and the testimony of a vocational expert that use of a cane rendered Herzog unemployable and disabled.

Presented with this evidence, the ALJ sought a medical opinion from a non-treating, non-examining source, Dr. Gerald Orth. On January 12, 2019, Dr. Orth submitted a medical statement based upon his review of medical records which opined, in part, that Herzog did not need a cane to ambulate. (Tr. 596). On this score, Dr. Orth's opinion was expressed in a particularly enigmatic fashion through a notation on a check box form indicating that Herzog did not require the use of a cane. Dr. Orth provided no further explanation for this medical finding. Moreover, while Dr. Orth purported to have considered the treating and examining source opinions

of Drs. Davis and Magurno, (Tr. 604-05), he made no effort to address, analyze or even acknowledge the contrary findings of these doctors who has actually seen, examined, and treated Herzog.

The ALJ then conducted a second hearing in this case on May 28, 2019. (Tr. 59-78). At this second hearing Herzog once again testified, reiterating that she needed the use of a cane to ambulate. (Tr. 66-69).

Following this second hearing on June 7, 2019, the ALJ issued a decision denying Herzog's application for benefits. (Doc. 12-25). In that decision, the ALJ first concluded that Herzog had not engaged in substantial gainful activity since November of 2016. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Herzog suffered from the following severe impairments: cardiomyopathy, pulmonary disease, vertigo, syncope, migraines, left-sided weakness, conversion disorder, depression, and anxiety. (Id.) At Step 3 the ALJ found that Herzog did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18). The ALJ then fashioned an RFC for Herzog that concluded that she could perform a limited range of light work. (Tr. 19). Notably absent from the RFC determination was any provision for the use of a cane by Herzog, a medical limitation that the VE had previously testified would preclude employment.

In reaching this result the ALJ gave the least weight to the medical source who knew Herzog best—her treating physician, Dr. Davis. The ALJ assigned only "limited" weight to Dr. Davis' medical opinion. (Tr. 23). While the ALJ acknowledged that Dr. Davis stated that Herzog needed a cane to ambulate, the ALJ's decision did not specifically address that aspect of the treating physician's opinion, concluding instead that Dr. Davis' opinion deserved little weight because the ALJ considered it to be based upon Herzog's reported symptoms. (Id.) This conclusion did not take into account the clinical records documenting Herzog's left leg weakness and instability.

The ALJ also rejected the findings of the examining consultative physician, Dr. Magurno, that Herzog required the use of a cane to ambulate. (Tr. 22-23). In this regard, the ALJ reasoned that "the assessed requirement that the claimant must ambulate with the use of a cane is inconsistent with the claimant's demonstrated inability to use her cane during the consultative examination." (Id.) Thus, the ALJ justified entirely discounting this aspect of the examiner's opinion based upon the paradoxical proposition that Herzog's struggles to use a cane to ambulate somehow proved that she did not need to use a cane.

Having rejected the opinion of every medical professional who treated, examined, or saw Herzog regarding her need to use a cane to ambulate, the ALJ then

apparently and uncritically accepted the view of Dr. Orth that that Herzog "does not required [sic] the use of a cane to ambulate." (Tr. 22). Given this evaluation of the evidence, which gave the greatest weight to the least informed and explained medical opinion, the ALJ found that Herzog could not perform her past work, but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 23-24). Having reached these conclusions, the ALJ determined that Herzog had not met the demanding showing necessary to sustain her claim for benefits and denied this claim. (Tr. 25).

This appeal followed. (Doc. 1). On appeal, Herzog challenges the adequacy of the ALJ's explanation of this RFC determination, particularly as it relates to the rejection of every medical opinion from treating and examining sources all of whom found that Herzog needed a cane to ambulate. This case is fully briefed and is, therefore, ripe for resolution. As discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal, and remand this case for further consideration and evaluation of the medical opinion evidence.

## III.  <u>Discussion</u>

### A.  <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

10

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u> <u>Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

Herzog submitted this disability claim prior to March of 2017. As such the Commissioner's regulations that were in effect prior to March 2017 control here. Those regulations set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to afford competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations

provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. <u>See</u> 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is

consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c). These benchmarks, which emphasize consideration of the nature of the treating relationship, also call for careful consideration of treating source opinions.

Indeed, this court has often addressed the weight which should be afforded to a treating source opinion in a Social Security disability appeals and emphasized the importance of such opinions for informed decision-making in this field. Recently, we aptly summarized the controlling legal benchmarks in this area in the following terms:

> Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001)(citing 20 CFR § 404.1527(c)(2); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Oftentimes referred to as the "treating physician rule", this principle is codified at 20 CFR 404.1527(c)(2), and is widely accepted in the Third Circuit. Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993); See also Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986). The regulations also address the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 CFR § 404.1527(c)(2). "A cardinal principle guiding disability, eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted); See also Brownawell v. Commissioner of

Social Security, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." Morales v. Apfel, supra at 317 .

Morder v. Colvin, No. 3:16-CV-213, 2016 WL 6191892, at *10 (M.D. Pa. Oct. 24, 2016).

Thus, an ALJ may not unilaterally reject a treating source's opinion, and substitute the judge's own lay judgment for that medical opinion. Instead, the ALJ typically may only discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis.  Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016). However, in all instances in social security disability cases the ALJ's decision, including any ALJ judgments on the weight to be given to treating source opinions,

must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Indeed, this principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, the failure on the part of an ALJ to fully articulate a rationale for rejecting the opinion of a treating source may compel a remand for further development and analysis of the record.

It is against these legal benchmarks that we assess the instant appeal.

## D.   **This Case Should Be Remanded for Further Consideration of the Medical Opinion Evidence.**

This case involves an unusual confluence of events. By the conclusion of the plaintiff's first disability hearing in December of 2018, every doctor who had treated, seen, or examined Herzog agreed that she required a cane to ambulate. Herzog also testified that she needed a cane to ambulate and medical records documented her profound and persistent left leg impairments The Vocational Expert, in turn, testified

21

that Herzog's need to use a cane in the workplace—which was undisputed—would preclude employment and render her disabled.

Confronted with this body of information, all of which supported a disability finding, the ALJ solicited a less informed medical opinion from a non-treating and non-examining source, Dr. Orth. Dr. Orth then opined that Herzog did not require a cane to ambulate, but expressed this opinion in a singularly unpersuasive fashion through a cryptic unexplained mark on a check block form. Thus, Dr. Orth's opinion on this issue of pivotal importance ran afoul of the well-settled rule that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Passaretti v. Berryhill, No. 4:17-CV-1674, 2018 WL 3361058, at *8 (M.D. Pa. July 10, 2018) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotations omitted)). Moreover, while Dr. Orth purported to have considered the treating and examining source opinions of Drs. Davis and Magurno, he made no effort to address, analyze, or even acknowledge the contrary findings of these doctors who has actually seen, examined, and treated Herzog.

Notwithstanding these patent deficiencies in Dr. Orth's opinion regarding whether Herzog required a cane to ambulate, the ALJ's decision seems to have given the greatest weight to this least informed medical opinion. The reasons for this choice by the ALJ are somewhat obscure but seems to rest upon the ALJ's belief

that "the assessed requirement that the claimant must ambulate with the use of a cane is inconsistent with the claimant's demonstrated inability to use her cane during the consultative examination." (Tr. 22-23). Thus, the ALJ appears to have concluded that Herzog's struggles to ambulate *with* a cane constituted proof that she did not *need* a cane to ambulate.

More is needed here. In our view, the ALJ's articulated assessment of this medical opinion evidence is flawed in several respects. First, absent some more compelling explanation, the decision to favor the opinion of the one doctor who never examined Herzog over the medical consensus of every treating and examining source ignores the settled principle grounded in law and logic that the opinions of those who have the greatest contact with the claimant ordinarily deserve greater weight and consideration than the views of someone who has never met, examined, or treated the claimant. This principle has particular resonance here where both the treating physician, Dr. Davis, and an independent examining physician, Dr. Magurno, separately concluded that Herzog needed a cane to ambulate. Overcoming this medical consensus required significant countervailing proof and some compelling justification, neither of which were presented here.

Instead, the ALJ apparently found that a check block form completed by Dr. Orth, the least informed physician in this case, had the greatest persuasive power.

The reliance placed on the enigmatic check block entry made by Dr. Orth discounts another well-settled rule concerning the evaluation of medical opinion evidence in disability cases; namely, the proposition that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason, 994 F.2d at 1065. Thus, in the normal course, Dr. Orth's cryptic check block entry should have been afforded little weight.

Further, the ALJ provides us with no sufficient explanation regarding why this type of weakly explained or defended opinion should have received controlling weight on the issue of whether Herzog needed a cane to ambulate. Instead, the ALJ simply discounts the countervailing view of the independent examining physician, Dr. Magurno, based upon ALJ's assertion that "the assessed requirement that the claimant must ambulate with the use of a cane is inconsistent with the claimant's demonstrated inability to use her cane during the consultative examination." (Tr. 22-23).

This analysis is fundamentally flawed in that it cites proof of Herzog's struggles to ambulate with a cane as evidence of her ability to ambulate without an assistive device. In fact, Herzog's difficulties walking with the assistance of a cane are more persuasive as evidence of her disability rather than proof of her ability to ambulate easily. Since the ALJ's conclusion that Herzog did not need a cane to

24

ambulate does not follow from this stated premise that she had difficulty walking with a cane, further evaluation of this issue is necessary here.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV. <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

June 2, 2021